UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

RECEIVED
MAR 2 7 2007
NANCY MAYER WHITTINGTON, CLERK
U.S. DISTRICT COURT

UNITED STATES OF AMERICA

v.  Cr. 05-248-JR

UNSEALED  (UNDER SEAL)

JAVIER DIAZ

FILED
MAR 2 7 2007
NANCY MAYER WHITTINGTON, CLERK
U.S. DISTRICT COURT

## DEFENSE SENTENCING MEMORANDUM

Javier Diaz, through counsel, respectfully submits that a sentence of Time Served is sufficient but not greater than necessary to comply with the purposes set forth under 18 U.S.C. § 3553. Like many recent immigrants to the United States, Mr. Diaz came to North America for economic reasons. He was law abiding and hard working and his involvement in the instant offense was the result of economic pressure because of the illness of his mother in Peru, and the "invitation" to earn easy money from a good friend--who happened to be working for a 5K.1 letter.

At the invitation of his "friend" Diaz located Sergio Orellana who he casually knew as a drug impresario. He connected Orellana with his "friend" who introduced "customers" to Diaz to purchase cocaine from Orellana. If one views the videos or listens to the audios it is immediately apparent that Javier Diaz was a novice, unschooled in the drug trade and flagrantly unprotected in his interactions and conversations with the cooperating witnesses and the undercover police. Mr. Diaz was employed as a painter and working at the time of the three transactions. He did not own a car and took public transportation to meet the cooperating witness. His neighbors, employer and family members were shocked at his involvement in any criminal conduct. Mr. Diaz has been ashamed of himself and very remorseful. He met with the government very soon after his arrest. He has been very cooperative and forthcoming. He plead guilty in June 2005.

At the plea, after discussions with the defendant, the Court ruled that for the purposes of calculating the sentencing guidelines, the Court would use only the 365 g. of cocaine base and the 254.4 g. of cocaine

powder which were the total amount of drugs passed to the undercover officers by Mr. Diaz. It is noteworthy that Mr. Diaz' total involvement in criminal conduct was with the cooperating witness and the undercover police "customers."

### The Defendant has an Excellent Employment History and has Supported Himself, His Siblings and his Mother

Both in Peru as a student and a young adult, and since 1999 in the United States, Mr. Diaz has worked hard to support his siblings and his mother. His involvement in this conspiracy grew in part from the onset of severe illness of his mother and his feelings of despondency and economic responsibility for his mother and his brother and sister. He was forced to drop out of the university because of financial problems. He felt obligated to contribute money for school fees for his siblings and to cover the medical bills for his mother.

Court's have determined that downward departures are justified where employment history and family ties are extraordinary. See *U.S. v. Thompson*, 74 F. Supp.2d 69 (D.Mass. 1999) "[N]ot only did defendant exhibit a sustained commitment to his family dating back to the instant he became a father, he consistently worked to provide for them," reversed on other grounds 234 F.3d 74 (1st C. 2000). "Young age and stable employment will justify a departure." *U.S. v. Higgins*, 967 F.2d 841 (3d Cir. 1992); Departure approved based on defendant's "long impressive work history--where good jobs are scarce. *U.S. v. Jones*, 158 F.3d 492 (10th Cir. 1998).

### §5C1.2 Safety Valve

Javier Diaz respectfully requests the Court accept the findings of the parties and the Probation Officer and find him qualified for sentencing under 18 U.S.C. § 3553(f)(1)-(5).

### The Crack/Powder Disparity

A lower sentence is appropriate because the disparity between sentences for powder and crack cocaine is unwarranted. This argument

is based primarily on the Sentencing Commission's own disavowal of the basis for the disparity. The Commission has issued multiple reports all concluding that the disparity is not warranted. The first report was issued in February 1995, wherein the commission repudiated the crack sentencing structure. <u>Special Report to the Congress: Cocaine and Federal Sentencing Policy</u> found the 100/1 penalty ratio could not be justified by the physiological effects of the two forms of cocaine and that there was a disparate impact on black defendants *Id.* at 161.

In April 1997 the Commission issued its second report. This report again concluded the crack/powder sentencing disparity was unwarranted. See <u>1997 Report</u>, at 3. The Commission found that nearly 90% of those convicted in federal court for crack cocaine distribution were African Americans, while the majority of crack cocaine users were White. Report at 8. The report found the penalty structure "results in a perception of unfairness and inconsistency." *Id.*

The Commission issued a new report in 2002 ("2002 Report") and made four main findings: the current penalties exaggerate the relative harmfulness of crack; the penalties sweep too widely and apply most often to lower level offenders; the quantity based system overstates the seriousness of most crack offenses and fails to provide proportionality; and the severity of the current penalties mostly impacts minorities. *Id.* at v-viii. See also www.ussc.gov/r_congress/02crack/2002crackrpt.htm.

The most recent 2004 report, <u>Fifteen Years of Guidelines Sentencing</u> ("2004 Assessment") again criticized the harsher penalties for crack. Average sentences for crack cocaine were 25 months longer than for meth amphetamine and 81 months longer than for heroin. *Id.* at 131.

For a complete analysis of the crack/powder disparity see Defendant's Sentencing Memorandum, *United States v. Lorenzo Pickett*, D.D.C. Cr. 01-181. F.P.D. A.J. Kramer.

Under the advisory guidelines Mr. Diaz is at level 34 for the 365 grams of crack cocaine alone. Without the sentencing disparity, the advisory guideline level for the 254 gr. of powder and the 365 gr. would be a level 26. Under the guidelines - - with a criminal history of I-- his range would be 63--78 months.

With credit for acceptance of responsibility the level would be

reduced to 23. With credit for the Safety Valve the level is reduced 2 points to a level 21. The range therefore would be 37- 46 months.

If the Court grants a departure under *United States v. Smith*, 27 F.3d 649 (D.C. Cir. 1994) the range would be reduced by six months or more.

Further, the government has filed a Motion pursuant to §5K.1.1 of the U.S. Sentencing Guidelines and 18 U.S.C. §3553(e). The Court has discretion to fashion a sentence to promote respect for the law and to provide just punishment for the offense. Mr. Diaz has been incarcerated since January 2005.

Wherefore, we respectfully submit, a sentence of time served would serve the purposes of a just sentence. Mr. Diaz' uncle is available to provide a ticket for his immediate removal from the United States and his return to Peru.

Respectfully submitted,

H. Heather Shaner #273276
Appointed by this Court for
Javier Diaz

1702 S St NW
Wash. DC 20009
202 2658210

## CERTIFICATE OF SERVICE

  A copy of this memorandum was telefaxed to Ausa Eliopoulis of March 25, 2007.

              *H. H. Shaner*
              H. Heather Shaner